Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE TRUHLICKA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TENNECO, INC., ROY V. ARMES,<br>THOMAS C. FREYMAN, DENISE<br>GRAY, BRIAN J. KESSELER,<br>MICHELLE A. KUMBIER, DENNIS J.<br>LETHAM, JAMES S. METCALF,<br>ALEKSANDRA A. MIZIOLEK,<br>CHARLES K. STEVENS III, JOHN S.<br>STROUP, and JANE L. WARNER,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

        Plaintiff, Eugene Truhlicka ("Plaintiff"), by and through his attorneys, alleges upon

information and belief, except for those allegations that pertain to him, which are alleged upon

personal knowledge, as follows:

### SUMMARY OF THE ACTION

        1.        Plaintiff brings this stockholder action against Tenneco, Inc. ("Tenneco" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a)

of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Apollo Global Management, Inc., via its subsidiary Pegasus Holdings III,

LLC and through merger vehicle Pegasus Merger Co. ("Merger Sub" and collectively with Parent, "Apollo") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 22, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Tenneco's common stock will be converted into the right to receive $20.00 in cash, without interest. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on March 15, 2022, Tenneco filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on March 15, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation

of the Exchange Act.    As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Tenneco, provided by Tenneco management to the Board and the Board's financial advisor Lazard Frères & Co. LLC ("Lazard") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Lazard, if any, and provide to the Company and the Board.

6.    Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.    Plaintiff is a citizen of Nebraska and, at all times relevant hereto, has been a Tenneco stockholder.

8.    Tenneco Inc. designs, manufactures, and sells clean air, and powertrain products and systems for light vehicle, commercial truck, off-highway, industrial, motorsport, and aftermarket customers worldwide. Tenneco is incorporated in Delaware and has its principal place of business at 500 North Field Drive, Lake Forest, Illinois 60045.  Shares of Tenneco common stock are traded on the New York Stock Exchange under the symbol "TEN".

9.    Defendant Roy V. Armes ("Armes") has been a Director of the Company at all relevant times.

10.    Defendant Thomas C. Freyman ("Freyman") has been a director of the Company at all relevant times.

11.    Defendant Denise Gray ("Gray") has been a director of the Company at all relevant times.

12.    Defendant Brian J. Kesseler ("Kesseler") has been a director of the Company at all relevant times.  In addition, Kessler serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Michelle A. Kumbier ("Kumbier") has been a director of the Company at all relevant times.

14.     Defendant Dennis J. Letham ("Letham") has been a director of the Company at all relevant times.

15.     Defendant James S. Metcalf ("Metcalf") has been a director of the Company at all relevant times.

16.     Defendant Aleksandra A. Miziolek ("Miziolek") has been a director of the Company at all relevant times.

17.     Defendant Charles K. Stevens III ("Stevens") has been a director of the Company at all relevant times.

18.     Defendant John S. Stroup ("Stroup") has been a director of the Company at all relevant times.

19.     Defendant Jane L. Warner ("Warner") has been a director of the Company at all relevant times.

20.     Defendants identified in ¶¶ 9 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Party Apollo is one of the largest alternative asset managers serving many of the world's most prominent investors

22.     Non-Party Merger Sub is a wholly owned subsidiary of Apollo created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

26.     Tenneco Inc. designs, manufactures, and sells clean air, and powertrain products and systems for light vehicle, commercial truck, off-highway, industrial, motorsport, and aftermarket customers worldwide. It operates through four segments: Motorparts, Performance Solutions, Clean Air, and Powertrain. The Performance Solutions segment designs, manufactures, markets, and distributes noise, vibration, and harshness performance materials; advanced suspension technologies; and ride control, braking, and systems protection products. The Clean Air segment offers catalytic converters and diesel oxidation catalysts; diesel particulate filters; burner systems; lean nitrogen oxide (NOx) traps; selective catalytic reduction (SCR) systems; hydrocarbon vaporizers and injectors; SCR-coated diesel particulate filters systems; urea dosing systems; four-way catalysts; alternative NOx reduction technologies; mufflers and resonators; fabricated exhaust manifolds; pipes; hydroformed assemblies; elastomeric hangers and isolators; and aftertreatment control units. The Powertrain segment provides pistons, piston rings, piston pins, cylinder liners, valvetrain products, valve seats and guides, ignition products, dynamic seals, bonded piston seals, combustion and exhaust gaskets, static gaskets and seals, engine bearings, industrial bearings, and bushings and washers. The company was formerly known as Tenneco

Automotive Inc. and changed its name to Tenneco Inc. in 2005. Tenneco Inc. was incorporated in 1996 and is based in Southfield, Michigan.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 5, 2021 press release announcing its 2022 Q3 financial results, the Company highlighted  $ Tenneco posted higher third quarter total revenue of $4.3 billion, up 2% versus prior year. Value-add revenue for the third quarter 2021 was $3.3 billion.

28.     Speaking on the positive results, CEO Defendant Kessler said, "'Our third quarter results demonstrate the scale and diversification in our regions and markets served and our ability to actively manage costs. Actions taken during the quarter helped mitigate the effects of the volatile light vehicle production environment driven by the semiconductor shortage along with inflationary pressures and other pandemic-related challenges," ….. "We appreciate the ongoing efforts of our global team members who remain focused on business-critical priorities during these extraordinary times."

29.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Tenneco.  For example, Tenneco's revenue performance in the quarter strongly outpaced industry light vehicle production, which declined 20% versus last year, driven by their diversified end market mix. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Tenneco to enter into the Proposed Transaction without providing requisite information to Tenneco stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.     Notably, the while the Preliminary Proxy Statement indicates that a "Transaction Committee" of the Board was created to run the sales process, it does not give adequate reasoning as to why the Transaction Committee contained directors who were not independent or disinterested. For example, CEO Defendant Kesseler sat on the Transaction Committee.

33.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Apollo, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

35.     On February 23, 2022, Tenneco and Apollo issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **LAKE FOREST, Ill., Feb. 23, 2022** /PRNewswire/ -- Tenneco (NYSE: TEN) announced today it has entered into a definitive agreement to be acquired by funds managed by affiliates of Apollo (NYSE: APO) (the "Apollo Funds") in an all-cash transaction with an enterprise valuation of approximately $7.1 billion, including debt.
>
> The purchase price of $20.00 per share represents a 100.4% premium over the Company's closing share price of $9.98 on February 22, 2022 and a 71.6% premium over the Company's unaffected 90-day VWAP. Upon completion of the transaction, Tenneco's shares will no longer trade on the New York Stock Exchange, and Tenneco will become a private company. Tenneco will continue to operate under the Tenneco name and brand and maintain a global presence.

"We are pleased to have reached this agreement with Apollo, which we believe will deliver immediate and certain cash value to Tenneco shareholders at a substantial premium," said Dennis Letham, Chairman of the Board of Tenneco. "The Board's decision follows careful evaluation of the transaction and thoughtful and comprehensive review of value creation opportunities for Tenneco. We believe this transaction is the right path forward and achieves our goal of maximizing value for Tenneco shareholders, and will benefit our team members, customers and business partners around the world."

"Over the last several years, Tenneco has transformed its business to succeed in today's environment. This transaction marks a significant milestone and will provide us with a new and exciting platform from which we can continue our global strategy in an evolving and dynamic mobility landscape," said Brian Kesseler, Tenneco's chief executive officer. "In Apollo, we have a partner that recognizes the strength of our product portfolio and our ability to serve leading OEM and aftermarket blue-chip customers globally. Specifically, this partnership will allow us to continue to invest in and grow Tenneco's multiple segments and global footprint. This transaction is also a testament to the achievements of our global team, whose commitment and focus during these extraordinary times have enabled our success."

Apollo Partner Michael Reiss said, "Tenneco is a key solutions provider for global mobility markets with a long-held commitment to innovation and high-quality service. We look forward to working with the Tenneco team to build on the strong foundation in place today, investing across their platform and product categories for growth and delivering innovative solutions for customers."

**Approvals and Timing**

The transaction, which has been unanimously approved by the Tenneco Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Tenneco shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition.

*Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicate that Tenneco insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Tenneco.

37.     Notably, Company insiders, currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  However, while the Preliminary Proxy Statement fails to disclose the specific stock holdings of Company insiders or how much consideration such holdings will be exchanged for if the Proposed Transaction is consummated.

38.     Additionally, Company insiders also own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| NAME | COMPANY RSUS (#) | COMPANY RSUS ($)(1) | COMPANY PSUS (#) (2) | COMPANY PSUS ($)(1) | TOTAL VALUE ($) |
|---|---|---|---|---|---|
| **EXECUTIVE OFFICERS** | | | | | |
| Brian J. Kesseler | 870,355 | 17,407,100 | 1,267,231 | 25,344,620 | 42,751,720 |
| Matti Masanovich | 223,185 | 4,463,700 | 319,329 | 6,386,580 | 10,850,280 |
| Kevin W. Baird | 259,076 | 5,181,520 | 340,339 | 6,806,780 | 11,988,300 |
| Rainer Jueckstock | 107,723 | 2,154,460 | 246,748 | 4,934,960 | 7,089,420 |
| Bradley S. Norton | 138,280 | 2,765,600 | 187,189 | 3,743,780 | 6,509,380 |
| Kaled Awada | 134,843 | 2,696,860 | 168,928 | 3,378,560 | 6,075,420 |
| John Patouhas | 22,288 | 445,760 | 51,052 | 1,021,040 | 1,466,800 |
| Thomas J. Sabatino, Jr. | 100,802 | 2,016,040 | 182,850 | 3,657,000 | 5,673,040 |
| Scott Usitalo | 114,319 | 2,286,380 | 179,212 | 3,584,240 | 5,870,620 |
| John W. Wehrenberg | 79,034 | 1,580,680 | 109,413 | 2,188,260 | 3,768,940 |

39.     In addition, certain employment agreements with certain Tenneco executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| NAME | CASH ($)(1) | PERQUISITES/ BENEFITS ($)(2) | EQUITY ($)(3) | TOTAL ($) |
|---|---|---|---|---|
| Brian J. Kesseler | 9,360,000 | 78,016 | 45,751,736 | 52,189,752 |
| Matti Masanovich | 3,507,000 | 60,344 | 10,850,282 | 14,417,626 |
| Kevin W. Baird | 3,675,000 | 60,344 | 11,988,302 | 15,723,646 |
| Rainer Jueckstock | 3,781,000 | 60,344 | 7,089,397 | 10,930,741 |
| Bradley S. Norton | 2,710,960 | 60,344 | 6,509,371 | 9,280,675 |

40.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must

be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41.     Thus, while the Proposed Transaction is not in the best interests of Tenneco, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

42.     On March 15, 2022, the Tenneco Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

  a.   Specific reasoning as to why the Transaction Committee of the Board that was created to run the sales process was not composed solely of independent and disinterested directors;

b.  Whether the confidentiality agreements entered into by the Company with Apollo differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Apollo, would fall away; and

d.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Tenneco's Financial Projections*

44.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Tenneco provided by Tenneco management to the Board and Lazard and relied upon by Lazard in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Lazard noted that it, "reviewed various financial forecasts and other data provided to Lazard by the Company relating to the business of the Company, including financial forecasts identified as the "Base Case" prepared by management of the Company."

46.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Apria management provided to the Board and Lazard. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47.     With regard to the *Base Case Management Projections* prepared by Tenneco Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

  a. Value Added Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific adjustments made to remove the effects on Tenneco's revenues of doing business in currencies other than the U.S. dollar and to remove the effect of substrate sales in the Clean Air segment that occur when, at the direction of its original equipment customers, Tenneco purchases catalytic converters or components thereof from suppliers, uses them in its manufacturing processes and sells them as part of the completed system;

    b.  EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest, income taxes, depreciation and amortization;

    c.  Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, income taxes, changes in net working capital, capital expenditures and other cash expenses; and

    d.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: tax-adjusted EBITDA, and the specific adjustments made for the impact of pensions and other post-employment benefits, capital expenditures, change in net working capital and certain other cash expenses based.

48.    With regard to the *Upside Case Management Projections* prepared by Tenneco Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a.  The specific inputs and assumptions upon which the following assumptions were based:

        i.  Global light vehicle production volumes of 82.7 million units in 2022, 91.9 million units in 2023, 98.1 million units in 2024, 99.5 million units in 2025 and 99.0 million units in 2026;

        ii.  4 percent annual growth in aftermarket revenues;

    b.  Value Added Revenue, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the specific adjustments made to remove the effects on Tenneco's revenues of doing business in

currencies other than the U.S. dollar and to remove the effect of substrate sales in the Clean Air segment that occur when, at the direction of its original equipment customers, Tenneco purchases catalytic converters or components thereof from suppliers, uses them in its manufacturing processes and sells them as part of the completed system;

c.   EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings before interest, income taxes, depreciation and amortization; and

d.   Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, income taxes, changes in net working capital, capital expenditures and other cash expenses.

49.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lazard's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

52.     In the Preliminary Proxy Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.     With respect to the *Comparable Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized range of multiples of estimated EV / 2022 EBITDA of 4.0x to 5.0x.

54.     With respect to the *Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized range of EV / LTM EBITDA multiples of 5.0x to 6.0x;

      b.   The specific date on which each precedent transaction closed; and

      c.   The value of each precedent transaction.

55.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The range of implied terminal values for the Company calculated;

      b.   The specific inputs and assumptions used to determine the selected range of exit EBITDA multiples of 4.0x to 5.0x which was applied to the Company's estimated EBITDA for calendar year 2026;

    c.  The specific inputs and assumptions used to determine the selected discount rates of 10.5% to 11.5%; and

    d.  The weighted average cost of capital of the Company utilized.

56.    With respect to the *Leveraged Buyout Return Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the assumed five-year investment period

    b.  The specific inputs and assumptions used to determine the utilized target internal rates of return ranging from 15% to 20%;

    c.  The specific inputs and assumptions used to determine the utilized total leverage at closing of 4.2x 2021 EBITDA; and

    d.  The specific inputs and assumptions used to determine the utilized exit multiple of 4.0x to 5.0x.

57.    With respect to the *Broker Target Prices* analysis, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific price targets utilized; and

    b.  The firms that generated such price targets.

58.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Tenneco

stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

60.    Plaintiff repeats all previous allegations as if set forth in full herein.

61.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Tenneco's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Tenneco within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Tenneco to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Tenneco and all of its employees. As alleged above, Tenneco is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 17, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*